## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CRIMINAL NO.  12-418-1 |
| | : | |
| ROBERT LAMAR WHITFIELD | : | |
| | : | |

### MOTION FOR HEARING AND FOR DISCOVERY ON THE
### ISSUE OF RACIAL PROFILING/SELECTIVE PROSECUTION

NOW COMES the Defendant Robert Lamar Whitfield by his attorney, J. Michael Farrell, Esquire, and moves this Court for a hearing and for an order compelling the Government to provide certain discovery described below.

The Defendant seeks this information in order to pursue a motion to dismiss the Indictment on the basis of his good faith belief that the Philadelphia District Office of the Bureau of Alcohol, Firearms and Tobacco (hereinafter referred to as "ATF"), with the complicity of the United States Attorney's Office for the Eastern District of Pennsylvania, targeted the Defendant Robert Lamar Whitfield, and co-defendants, all African-American men, for prosecution in the instant case based on their racial identity, by the deliberate practice of creating and instigating a government sponsored "sting" operation in the form of a specific type of crime, to wit: a phony robbery of a non-existent drug "stash house".   Further, Defendant Whitfield requests a hearing and information via discovery to demonstrate that the instant prosecution was patterned after other prosecutions identical in all important respects to the instant case targeting persons of color as criminal defendants by the deliberate practice of creating and instigating phony robberies of non-existent drug "stash houses".

The Defendant's requests for a hearing and for discovery as stated herein are made pursuant to the Fed.R.Crim.P. 29, Fed.R.Crim.P. 16, the analogous local rules, the equal protection

component of the Due Process Clause of the Fifth Amendment, and the inherent power of the Court

to order broader discovery in appropriate cases.  See *Wright and Miller*, 2 Federal Prac. and Pro.

Crim., §254, n. 15, 22, 31-3 wherein it is noted that

> The Advisory Committee Note to the 1975 amendments in part: "[t]he rule is intended to prescribe the minimum amount of discovery to which the parties are entitled.  It is not intended to limit the judge's discretion to order broader discovery in appropriate cases."  Courts have taken this seriously, holding that the rule does not limit their "inherent power" to order discovery that goes beyond what the rules authorizes.  In addition, the constitutional compulsion of the "*Brady* rule" may require the Government to disclose matter that goes beyond Rule 16(a)(1)(E) and all other applicable rules and statutes.

In support of this Motion, the Defendant states as follows:

1. This case is another in what has become a staple practice of Government agents and

prosecutors: the creation of a phony plan to commit a robbery to obtain non-existent drugs from a

non-existent "stash house" in an urban setting.  The elements are simple.  As demonstrated by the

facts in the present case, the Government - using an informant and an undercover agent – instigates

the creation of a seemingly plausible conspiracy to commit a hypothetical crime – the robbery of a

residence in which a drug dealer has stored a substantial quantity of drugs.    Specifically, an

informant and undercover agent purport to have knowledge of a stash house whose location is known

to the informant and/or undercover agent wherein drugs (invariably cocaine or crack cocaine and

always in sufficient quantities to trigger statutory minimum sentences) are stored and guarded by just

a few people with guns.  The informant and/or undercover agent purport to have knowledge of and

access to the residence because they are drug purchasers or couriers and therefore can set someone

up to commit an armed robbery of the stash house, obtain the drugs and divide them with the

robbers.

Using that story line, the informant and agent search for their prey: invariably, and seemingly deliberately, an African-American or Latino individual whom they believe possibly would be interested in the commission of a stash house robbery and can be persuaded to act on their phony plan. Once the targeted prey goes for the bait videotaped meetings and wired telephone conversation ensue, and ultimately arrests are made for the initial prey and persons – invariably African-Americans - drawn into the conspiracy by the targeted prey or possibly by the agent and/or the informant. The men are then charged with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. §1951(a), drug trafficking conspiracy in violation of 21 U.S.C. §841 (alleging sufficient quantities of drugs necessary to trigger mandatory sentences or high offense scores), and weapons offenses in violation of 18 U.S.C. §1922(g) and 249(c) - notwithstanding the fact that in the present case, and all similar cases, the drugs upon which the supposed interstate commerce nexus was based never existed, and there was no stash house to be robbed.

See for example the Indictment in the present case. See also, Edna Katherine Tinto, *Undercover Policing, Overstating Culpability*, NYU Law School Working Paper No. 12-04 at p. 49-55 (2012)   http://ssrn.com/abstract=2016362   which article, though not focused on targeting of defendants based on race. discusses the related law enforcement practice of "sentence manipulation" by which circumstances are deliberately created to ensure a defendant is eligible for a more severe sentence that his criminal conduct would otherwise have justified.

2. In order to determine if the ATF and the United States Attorney's Office have targeted or are targeting persons of color, principally African Americans but also Latinos, defense counsel, in consultation with other defense counsel, have attempted to identify all phony stash house robbery cases brought in the Eastern District of Pennsylvania since 2009 to determine whether the racial identities of the defendants.

3. Given the information complied so far (see Paragraphs 4 and 5, *infra*), it appears that if the ATF and the United States Attorney's Office assert they are not aware that the law enforcement tactic of creating conspiracies to rob non-existent stash houses of non-existent quantities of cocaine and crack in urban environments are not targeting person of color they are, at best, burying their heads in the sand.  See *McGill v. Duckworth*, 944 F.2d 344, 351 (7th Cir. 1991) ("Suspecting that something is true but shutting your eyes for fear of what you will learn satisfies scienter requirements.  Going out of your way to avoid acquiring unwelcome knowledge is a species of intent."); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 83-4 (2nd Cir. 2005).

4. Upon information and belief, the information that is currently available to the defense regarding racial profiling and selective prosecution is as follows:

a. *United States v. Alhinde Weems and Lamar C. Smith*, Magistrate Case No. 09-583, Criminal No. 09-708 (JHS)[1], in which both defendants were African American (see the Criminal Complaint attached hereto as Exhibit "A");

b. *United States v. Charles Bryant, Brian Andrews Sr., Brian Andrews Jr., Shawn Mobley, Tito Hoskins, and Kenyon Williams*, Magistrate Case No. 12-935-M, Criminal No. 12-346 (SD), in which all defendants were African American (see the Criminal Complaint attached hereto as Exhibit "B");

c. *United States v. Robert Lamar Whitfield, Marlon Graham, Kareem Long, Najee Murray and Frank Thompson* (the instant case), Magistrate Case No. 12-1089, Criminal No. 12-418 (JS), in which all defendants are African American (see the Criminal Complaint attached hereto as Exhibit "C"); and

---

[1] The FBI was the primary investigatory agency in the case, using an ATF informant.

    d.   *United States v. Dwight Berry, Antonio Ellis, Jermau Johnston and Askia Washington*, Magistrate Case No. 13-316, Criminal No. 13-171 (JHS), in which all defendants are African American (see the Criminal Complaint attached hereto as Exhibit "D").

    5.  Therefore, upon information and belief, from 2009 to the present, the ATF and the United States Attorney's Office have brought at least four phony stash house robbery cases charging 20 individuals, all of whom are African Americans.

    6.  On the face of matters, this fact presents a stark picture of a discriminatory law enforcement practice because, in these kinds of cases, ATF and the United States Attorney's Office were not pursuing the prosecution of persons for actual crimes an ATF investigation had uncovered. Rather, in the aforementioned cases the informants and the ATF deliberately selected African American persons to present with the opportunity to commit what the targets were told will be a lucrative crime – a "tawdry" law enforcement practice in the words of the Seventh Circuit in *United States v. Lewis*, 641 F.3d 773 (7th Cir. 2011). Specifically, as described by the Court in regard to the phony stash house robbery case discussed therein:

> In what's fast becoming a rather shopworn scenario in this court, Lewis, Williams, and Billingsley, like a host of (apparently) unrelated defendants before them, <u>were convicted of conspiring to distribute cocaine that didn't exist—cocaine they planned to liberate from a fictional stash house guarded by members of an imaginary Mexican cartel</u>. The sting that ensnared the three defendants here was orchestrated by Bureau of Alcohol, Tobacco and Firearms ("ATF") Agent David Gomez in his undercover role as "Loquito." <u>We have seen versions of this sting, which appears a bit tawdry, several times</u>. … <u>We use the word "tawdry" because the tired sting operation seems to be directed at unsophisticated, and perhaps desperate, defendants who easily snap at the bait put out for them by Agent Gomez.</u>

<u>Id</u>. 777 (Emphasis added).

    7.  The Defendant herein requests the United States Attorney's Office corroborate the accuracy of information herein.

8. In view of the Government's deliberate targeting and solicitation of African Americans to enter into conspiracies concocted by the Government agents to commit phony stash house robberies, this Court should order an evidentiary hearing on the issue of whether the Government has not engaged in prosecutorial misconduct and enter an order to compel the Government to provide the defense information about its practices in advance of the hearing. In doing so, the Court must consider not only Fed.R.Crim.P. 16 and Fed.R.Crim.P. 29 but also its inherent power to order discovery to serve the needs of the equal protection component of the Due Process Clause of the Fifth Amendment. See *Wright and Miller*, 2 Federal Prac. and Pro. Crim., §254, n. 15, 22, 31-3. As the Supreme Court said in *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996):

> Of course, a prosecutor's discretion is "subject to constitutional constraints." *United States v. Batchelder*, 442 U.S. 114, 125 (1979). One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954), is that the decision whether to prosecute may not be based on the "an unjustifiable standard such as race, religion, or other arbitrary classifications," *Oyler v. Boles*, 368 U.S. 448, 456 (1962). A defendant may demonstrate that the administration of a criminal law is "directed to exclusively against a particular class of persons... with a mind so unequal and oppressive" that the system of prosecution amounts to "a practical denial" of equal protection of the law. *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886).

9. The inherent powers of the Court in the context of the instant case authorize the discovery sought below despite the decisions in *Armstrong* and *United States v. Barlow*, 310 F.3d 1007, 1010-12 (7th Cir. 2002) because this case is substantially different than those and other selective prosecution cases and the discovery being sought may well impact the Government's burden under *Brady v. Maryland*, 373 U.S. 83 (1963). See for example *United States v. Gilbert*, 75 F.Supp.2d 12, 15 (D.Mass 1999) ("Of course, if the Government is aware that race was considered in any way in its decision to seek the death penalty, that information, in the Court's opinion, would have to be

divulged pursuant to *Brady v. Maryland*).  See also *United States v. Tuitt*, 68 F.Supp.2d 4, 6-9 (D.Mass. 1999) and *United States v. Jones*, 159 F.3d 969 (6th Cir. 1998).

      10.  The Defendant herein requests that the Court order an evidentiary hearing and order the Government to produce in advance information specifically listed below.  The defense acknowledges that the Court's discovery order may not impinge on the Government's legitimate rights under Fed.R.Crim.P. 16(a)(2) ("this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.  Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500).  However, in the event that any internal government documents contain any evidence of targeting of African American individuals in connection with the instigation of conspiracies to commit phony stash house robberies the Court should order the Government to disclose said documents to the Court for *in camera* by the Court, and that the Court either disclose the information to Defendant under the authority of *Brady v. Maryland,* or, if the Court decides that the documents or information need not be disclosed to the defense, that the Court preserve the information under seal for purposes of appellate review.

      The discovery sought is:

      a. A list by case name, number and the race of each defendant of all phony stash house robbery cases brought by the United States Attorney's Office for the Eastern District of Pennsylvania from 2006 to the present based on investigations conducted by ATF or any other federal law enforcement agency, and any documents that show that the information stated in paragraph 4a.-d *supra.* is incorrect.

b. For each such case listed in response to section "a" above, a statement of prior criminal contact that the federal agency responsible for the investigation had with each defendant prior to initiating the phony stash house robbery.   (If all such information for a particular case is contained in the criminal complaint, provision of a copy of the complaint would be a sufficient response).

c. The statutory or regulatory authority for ATF or any other federal law enforcement agency to instigate and/or pursue phony stash house robbery cases involving any illegal drugs (e.g. heroin, cocaine, crack, ecstacy, methamphetamine, etc.), or any decision by any federal agency, the Justice Department or the White House to authorize ATF or any other federal law enforcement agency to pursue such cases in the Eastern District of Pennsylvania.

d.  All national and Philadelphia Field Office ATF manuals, circulars, field notes, correspondence or any other material which discuss "stings", "reverse stings", "phony stash house ripoffs or robberies" or entrapment operations, including protocols and/or directions to agents and to confidential informants regarding how to conduct such operations, how to determine which persons to pursue as potential targets or ultimate defendants, how to ensure that the targets do not seek to quit or leave before an arrest can be made, and how to ensure that the agents are not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

e.  All documents that contain information on whether and how supervisors and managers of the Philadelphia Area ATF and other federal law enforcement agencies involved in phony stash house robbery cases sought to determine whether or not its agents and informants were targeting persons on the basis of their race, color, ancestry or national origin for these phony stash house robbery cases, and what actions did the Philadelphia Area ATF (i.e, operating in the Eastern District of Pennsylvania) or other federal law enforcement agency supervisors and managers took to

ensure that agents and/or informants were not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

      f. The number of confidential informants that the Philadelphia Area ATF has used each year from 2006 to the present and the number of those confidential informants who had access to non-African American or persons of non-African descent who could be targeted for a phony stash house robbery cases.

      g. The factual basis in each case cited in paragraph 4 and cases produced in response to the above and the cases produced in response to paragraph 10a regarding decisions made to pursue or initiate an investigation against any of the individuals listed as defendants in these cases.

      h. All documents containing instructions given during the time Michael Levy or Zane David Memeger have been the United States Attorney for the Eastern District of Pennsylvania about the responsibilities of Assistant United States Attorneys to ensure that defendants in cases brought by the Office of the United States Attorney for the Eastern District of Pennsylvania have not been targeted due to their race, color, ancestry or national origin and specifically that those persons who are defendants in phony stash house cases in which ATF was the investigatory agency have not been targeted due to their race, color, ancestry or national origin and that such prosecutions have not been brought with any discriminatory intent on the basis of the defendant's race, color, ancestry or national origin.

      i. All documents that contain information about all actions taken during the time Michael Levy or Zane David Memeger have been the United States Attorney for the Eastern District of Pennsylvania about the responsibilities of the Assistant United States Attorney for the Eastern District of Pennsylvania to ensure and/or check to determine that defendants in cases brought by the Office of the United States Attorney for the Eastern District of Pennsylvania have not been targeted

due to their race, color, ancestry or national origin and specifically that those persons who are defendants in phony stash house cases in which ATF was the investigatory agency have been targeted due to their race, color, ancestry or national origin and that such prosecutions have not been brought with any discriminatory intent on the basis of the defendant's race, color, ancestry or national origin.

WHEREFORE, for the foregoing reasons, Defendant Robert Lamar Whitfield requests this Court order a hearing and order the Government to produce in advance the information sought in paragraphs 10 a.-i.

Respectfully submitted,

J. MICHAEL FARRELL, ESQUIRE
Attorney for Defendant
718 Arch Street - Suite 402N
Philadelphia, PA 19106
(215) 925-1105
Attorney for Defendant
Robert Lamar Whitfield

Dated:  10/25/13

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| V. | :   CRIMINAL NO.  12-418-1 |
| | : |
| ROBERT LAMAR WHITFIELD | : |
| | : |

## CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of October, 2013, a true and correct copy of the

foregoing Motion has been sent via the Court's electronic filing system and First Class Mail,

postage pre-paid, to the following:

Virginia Pratter, Esquire
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

J. MICHAEL FARRELL, ESQUIRE
Attorney for Defendant
Robert Lamar Whitfield

v