IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | No. 12-418-1 |
| v. | : | |
| | : | CIVIL ACTION |
| ROBERT LAMAR WHITFIELD | : | No. 16-3173 |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                            **November 16, 2020**

Defendant Robert Lamar Whitfield collaterally attacks his convictions for conspiring and attempting to rob a fake stash house, and for carrying a firearm during a drug crime or crime of violence. He argues his counsel was ineffective, and his firearm conviction should be overturned because recent Supreme Court cases held the definition of a crime of violence is unconstitutionally vague. The Court will deny Whitfield's motion to vacate, set aside, or correct his sentence without a hearing because the record shows that his attorney was not ineffective, and his firearm conviction is not impacted by recent Supreme Court precedent.

**BACKGROUND**

In June and July 2012, Whitfield had several meetings and phone calls with a confidential informant and an undercover Bureau of Alcohol Tobacco and Firearms (ATF) agent. Initially, the ATF planned to use Whitfield to get in touch with Quasi Payne, who was the target of its investigation. The agent and the confidential informant told Whitfield the agent needed a group of people to rob a drug stash house. Instead of putting the agent in touch with Payne, Whitfield volunteered to commit the robbery himself. Whitfield bragged that he had robbed stash houses in the past, including heroin and marijuana stash houses. He also said he ran a scam involving selling fake cocaine. After learning this information, the ATF began targeting Whitfield instead of Payne. The ATF agent told Whitfield the stash house contained ten kilograms of cocaine. He asked

Whitfield to sell his share of the cocaine after the robbery and Whitfield agreed to do so. Whitfield explained that he knew someone who would pay seventy-five thousand dollars for two kilograms of cocaine. The agent asked Whitfield to select a team of experienced robbers to help commit the robbery.

On the day of the robbery, July 18, 2012, the ATF agent met with Whitfield and the seven other defendants[1] in this case. They met in a hotel parking lot where the agent explained the robbery plan. After ending their meeting at the hotel, the agent and the Defendants drove to a junkyard to ostensibly pick up a car the agent had brought for the robbery. At the junk yard, the Defendants began preparing for the robbery by taking out their guns and putting on gloves. The ATF agent then called in backup and all the Defendants were arrested. On August 9, 2012, all eight Defendants were indicted. While three of Whitfield's codefendants pleaded guilty, Whitfield and the other four codefendants went to trial.

During trial, many references were made to Whitfield's alleged prior robberies. In response to a question about why the ATF initially targeted Quasi Payne, the ATF agent explained that the government had "developed information that Quasi Payne and Lamar Whitfield a/k/a Goat were involved in home-invasion robberies." Trial Tr. Vol. 2 at 60. The Court admitted this testimony in order to explain the ATF's initial interest in Quasi Payne. The jury also heard recordings of Whitfield's meetings with the ATF agent and the confidential informant. In those recordings, Whitfield bragged about his past experience robbing drug dealers. Similarly, Whitfield's codefendant Najee Murray testified that Whitfield had robbed drug stash houses in the past. (Murray pleaded guilty and testified for the government as part of his guilty plea.)

---

[1] The other defendants are Marlon Graham, Najee Murray, Lafayette Rawls, Jamie Dales, Kareem Long, Kenneth Parnell, and Frank Thompson.

The jury was permitted to use evidence of Whitfield's past crimes as a factor in denying his entrapment defense. During the government's closing, it argued Whitfield's past crimes were evidence of his predisposition to commit crimes. The government then explained that Whitfield could not succeed on his entrapment defense if he was predisposed to commit these crimes. Similarly, the jury instructions explained that evidence of Whitfield's past crimes could be considered in evaluating his entrapment defense. However, the instructions cautioned that evidence of Whitfield's past crimes could not be used as evidence that he committed this crime. Both the government's closing and the jury instructions listed several pieces of evidence regarding Whitfield's past crimes. These pieces of evidence included the ATF agent's testimony that the government had information indicating Whitfield committed robberies with Quasi Payne.

The jury rejected Whitfield's entrapment defense and convicted Whitfield of five charges: conspiracy to commit Hobbs Act robbery, attempted Hobbs Act robbery, conspiracy to sell drugs, attempt to sell drugs, and carrying a firearm during a drug crime or crime of violence. According to the jury's answers to special interrogatories on the verdict slip, Whitfield's firearm conviction was premised on all four of his other convictions. After his conviction, Whitfield and his codefendants sought discovery on whether they were victims of selective enforcement. They argued they were targeted in the stash house sting because they were all black. The Court denied the motion because it was untimely and because the Defendants did not meet the threshold showing for discovery on this claim.

Before Whitfield was sentenced, he argued for a lower guidelines range based on the doctrine of sentencing entrapment. Although the Third Circuit has never adopted this doctrine, the Court considered Whitfield's argument and denied it on the merits. The Court concluded Whitfield had not met his burden to show he was entrapped into committing a more serious crime than he

would have otherwise committed. The Court then sentenced Whitfield to 15 years and 8 months in prison.

Whitfield appealed his conviction and sentence to the Third Circuit, and the Third Circuit denied his appeal.[2] *United States v. Whitfield*, 649 F. App'x 192 (3d Cir. 2016). He now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In his amended motion to vacate,[3] Whitfield argues his counsel was ineffective because his counsel allegedly: (1) incorrectly argued Whitfield's sentencing entrapment claim; (2) did not object when evidence of Whitfield's alleged robberies with Quasi Payne was used to refute Whitfield's entrapment defense; and (3) delayed in filing Whitfield's motion to dismiss the indictment based on selective enforcement. In a supplement to his amended motion,[4] Whitfield argues his firearm conviction should be overturned because of a change in the law.

**DISCUSSION**

The Court will deny Whitfield's motion to vacate without a hearing because the record shows that he is not entitled to relief. Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move to have his sentence vacated, set aside, or corrected if the sentence was imposed in violation of a law or constitutional right such as the right to effective assistance of counsel. In

---

[2] The four other defendants who went to trial with Whitfield also appealed. Their appeals were likewise denied. *See United States v. Graham*, 639 F. App'x 152, (3d Cir. 2016); *United States v. Parnell*, 652 F. App'x 117 (3d Cir. 2016); *United States v. Long*, 649 F. App'x 200 (3d Cir. 2016); *United States v. Thompson*, 639 F. App'x 154 (3d Cir. 2016).

[3] The Court granted Whitfield's motion to amend his motion to vacate on January 11, 2018. Pursuant to Whitfield's request, his amended motion to vacate replaced his original motion to vacate.

[4] Whitfield moved to supplement his amended motion to vacate in August 2019, after the Supreme Court's decision in *United States v. Davis*, 39 S. Ct. 2319, 2336 (2019). The Court will grant Whitfield leave to file this supplement to his motion to vacate. Section II of this opinion addresses the arguments Whitfield has made in his supplemental motion.

evaluating a § 2255 motion, the Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015). When a § 2255 motion is filed, a district court must "grant a prompt hearing" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## I.      Ineffective Assistance of Counsel

Whitfield's counsel was not ineffective. To prove that his counsel was ineffective, Whitfield must show: (1) his counsel was deficient and (2) he was prejudiced by his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is deficient when his "representation fell below an objective standard of reasonableness." *Id.* at 688. When deciding whether counsel's representation fell below this standard, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even when counsel was deficient, a defendant must still show he was prejudiced to succeed on an ineffectiveness claim. A defendant is prejudiced by counsel's behavior when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

None of Whitfield's ineffectiveness claims meet this two-pronged standard. Whitfield's sentencing entrapment claim does not meet the deficiency prong or the prejudice prong. Whitfield's other two claims—his counsel's failure to limit the use of the ATF agent's testimony about Whitfield's robberies with Quasi Payne, and his counsel's delay in raising selective prosecution—do not meet the prejudice prong. The Court will address each of Whitfield's claims in turn.

Whitfield's counsel was not deficient when he discussed sentencing entrapment. Despite Whitfield's claims to the contrary, his counsel thoroughly presented his sentencing entrapment argument to the Court. Whitfield argues his counsel cited insufficient caselaw, but counsel identified the relevant Third Circuit case on this issue: *United States v. Sed*, 601 F.3d 224 (3d Cir. 2010). *See* Def's Sentencing Mem. at 7-8, ECF 375. In *Sed*, the Third Circuit neither adopted nor rejected the doctrine of sentencing entrapment. *Sed*, 601 F.3d at 230. Whitfield's counsel therefore directed the Court to cases from other circuits that discuss sentencing entrapment. Def's Sentencing Mem. at 7-8 (quoting *Sed*'s discussion of cases from ten other circuits and citing to two additional Ninth Circuit cases not referenced in *Sed*). Whitfield also argues his counsel failed to address Whitfield's propensity to commit crimes similar to the one at issue in this case. However, counsel addressed that issue during oral argument. He said "there's clear record evidence that my client was not predisposed and that, in fact, it was the inducement that overcame his will to engage in what was wrongful conduct." Sentencing Tr., July 1, 2014 at 41. After making that statement, Whitfield's counsel went on to address the propensity evidence presented at trial, including Whitfield's statements to the ATF agent about his past crimes. *Id.* at 41-48. Because Whitfield's counsel raised the appropriate cases and made the correct argument, he was not deficient in advocating for sentencing entrapment.[5]

Whitfield was also not prejudiced by his counsel's sentencing entrapment argument: the Court would have denied Whitfield's sentencing entrapment claim regardless of how that claim

---

[5] Whitfield also argues that his counsel incorrectly conflated sentencing entrapment with sentencing manipulation. However, as Whitfield's counsel pointed out, some Courts have applied the same legal standard to these two doctrines. *See, e.g.*, *United States v. Jaca-Nazario* (1st Cir. 2008) (noting that, in the First Circuit, "sentencing entrapment" and "sentencing factor manipulation" are "interchangeabl[e]"). Because the Third Circuit has not accepted either doctrine, it is unclear whether those two doctrines would be evaluated under different legal standards in this Circuit.

was presented. Under the "most expansive formulation" of the sentencing entrapment doctrine, entrapment "occurs when official conduct leads an individual otherwise indisposed to dealing in a larger quantity or different type of controlled substance to do so." *Sed*, 601 F.3d at 230. As Whitfield concedes, the defendant bears the burden of proving this defense by a preponderance of the evidence. Def's Am. Mot. to Vacate at 32, ECF 688; *see also United States v. Black*, 733 F.3d 294, 311 (9th Cir. 2013) ("The defendant has the burden of proving sentencing entrapment by a preponderance of the evidence.")

Whitfield cannot meet his burden to prove sentencing entrapment here. The Court denied Whitfield's sentencing entrapment argument because the evidence at trial showed that Whitfield was predisposed to stealing ten kilograms of cocaine, and he was not induced to commit this crime by the government's behavior. In support of this conclusion, the Court relied on four key facts: First, Whitfield "volunteered" to commit the robbery even though the government was initially targeting Quasi Payne. Mem. Op. at 10-11, July 9, 2014, ECF 388. The fact that Whitfield volunteered to commit the robbery undermines his argument that he was induced by the government's promise of a huge reward. Second, Whitfield "offer[ed] suggestions for how the robbery could be committed," which indicates that Whitfield was familiar with this type of crime. *Id.* Third, Whitfield "tout[ed] his past experience committing similar crimes," including robbing drug stash houses with large amounts of heroin and marijuana. *Id.* Whitfield's statements about his past crimes show that he had prior experience stealing large quantities of drugs, and therefore support the conclusion that he was predisposed to steal ten kilograms of cocaine. Fourth, Whitfield "assure[d] the undercover agent he and his associates had the ability to move the agent's share of the drugs," which suggests that he knew how to sell large quantities of cocaine. *Id.* Whitfield has not pointed to any evidence that would undermine these four factual findings, and the Court sees

no reason to reconsider them. The Court therefore had ample reason to deny Whitfield's sentencing entrapment claim, and it would have done so regardless of Whitfield's counsel's arguments. Whitfield was thus not prejudiced by his counsel's alleged failure to thoroughly argue his sentencing entrapment claim. *Cf., United States v. Moffitt*, 797 F. App'x 708, 714 (3d Cir. 2020) (holding that a defendant was not prejudiced by his attorney's failure to raise a sentencing entrapment defense in a fake stash house case where, as here, the defendant was not the initial target of the government investigation and the defendant bragged about his past robberies).

The Court now turns to the alleged misuse of the ATF's information about Whitfield's prior robberies with Quasi Payne. Whitfield was not prejudiced by any errors concerning this information because the jury would have denied his entrapment defense regardless. "The defense of entrapment requires proof of two elements: '[1] government inducement of the crime, and [2] a lack of predisposition on the part of the defendant to engage in the criminal conduct.'" *United States v. James*, 928 F.3d 247, 255-56 (3d Cir. 2019) (internal citations omitted; alterations in original). Neither of those elements were met here, regardless of whether the jury considered the ATF agent's testimony about Whitfield's alleged robberies with Quasi Payne.

The evidence at trial demonstrated that the government did not induce Whitfield to rob the stash house. To meet the inducement element, "the government's actions must have overpowered the defendant." *Id.* at 256. On the other hand, "mere solicitation by the government, without more, is not inducement." *Id.* (internal citations omitted). In this case, Whitfield volunteered to commit the robbery, so he could not have been induced. The government was not targeting Whitfield when he volunteered. Instead, the confidential informant asked Whitfield to contact the government's true target, Quasi Payne. Whitfield then refused to contact Quasi Payne and instead suggested that he should commit the robbery. He decided to volunteer for the robbery before the government told

8

him about the amount of drugs in the stash house. He therefore could not have been induced by the large amount of money he could have made from selling the drugs. The evidence that Whitfield volunteered for the robbery shows that he was not induced, and thus defeats his claim of entrapment. This evidence is unrelated to the ATF agent's testimony about Whitfield's prior robberies with Quasi Payne. Therefore, Whitfield would not have succeeded in his entrapment defense even if the jury had not considered the ATF agent's testimony.

There was also plenty of evidence that Whitfield was predisposed to rob the stash house without considering Whitfield's alleged prior robberies with Quasi Payne. This evidence included: (1) Whitfield's tape-recorded admissions to the agent and the confidential informant that he had robbed drug dealers in the past; (2) Najee Murray's testimony about Whitfield's past robberies; (3) Whitfield's statement to the agent that he had a buyer for several kilograms of cocaine; and (4) Whitfield's suggestions to the agent about how to perform the robbery. Indeed, the jury instructions mentioned at least five prior crimes Whitfield may have committed as possible evidence of Whitfield's predisposition to commit crimes. Trial Tr. Vol. 8 at 51. Therefore, the jury had plenty of evidence that Whitfield was predisposed even without the ATF agent's testimony that the government had "information" that Whitfield and Quasi Payne had committed robberies. Because of this propensity evidence, Whitfield's entrapment defense would have failed regardless of the agent's testimony, and Whitfield not prejudiced by any misuse of this testimony.

Whitfield was also not prejudiced by his counsel's delay in raising his selective enforcement claim. The Court would have denied this claim regardless of when it was raised. In its opinion on Whitfield's selective enforcement claim, the Court noted that this claim had been waived but nonetheless addressed the claim on its merits. In addressing the merits, the Court concluded that Whitfield was not entitled to discovery on his selective enforcement claim because

he failed to meet the threshold showing of discriminatory effect and discriminatory intent. *See* Mem. Op. at 17-19, June 27, 2014, ECF. No. 377. Therefore, even if Whitfield's request for discovery had been raised at the appropriate time, it would have been denied, and Whitfield was not prejudiced by his counsel's delay.

Whitfield incorrectly argues the Third Circuit's new ruling in *United States v. Washington*, 869 F.3d 193 (3d Cir. 2017), establishes prejudice. In *Washington*, the Third Circuit held that a defendant seeking discovery on a selective enforcement claim did not have to meet the same high burden as a defendant seeking discovery on a selective prosecution claim. *Id.* at 220. The new rule announced in *Washington* is not retroactively applicable to this case. *See United States v. Parnell*, 2020 WL 4736038, at *5-6 (E.D. Pa. Aug. 14, 2020) (explaining that *Washington* does not apply retroactively to Whitfield's codefendant, Kenneth Parnell). Whitfield nonetheless argues the Third Circuit would have announced the new *Washington* standard in his case if his counsel had not waived his selective enforcement claim. The Court disagrees. In Whitfield's direct appeal, the Third Circuit endorsed this Court's decision to use the pre-*Washington* discovery standard announced in *United States v. Armstrong*, 517 U.S. 456 (1996). The Third Circuit stated, "we also think the District Court did not abuse its discretion in applying the [more stringent] *Armstrong* standard to deny defendants' discovery request. Although *Armstrong* dealt only with a discovery request into possible selective prosecution . . . the prima facie elements for both selective prosecution and selective enforcement are the same: discriminatory effect and discriminatory intent." *United States v. Whitfield*, 649 F. App'x 192, 196 n.11 (3d Cir. 2016). This statement shows that, even if the Third Circuit had addressed the merits of Whitfield's selective enforcement claim, it was unlikely to overturn this Court's decision. Whitfield's appeal would therefore have

been denied even if his counsel had raised his selective enforcement claim in a timely fashion. Thus, Whitfield did not suffer any prejudice due to his counsel's delay.

## II.    **Whitfield's Firearm Conviction**

Whitfield is not entitled to relief from his conviction for carrying a firearm during a drug crime or crime of violence under 18 U.S.C. § 924(c). This statute prohibits a defendant from carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). In other words, a defendant may be convicted under this statute if he uses a gun in connection with either a drug trafficking crime or a violent crime. The statute specifies that a drug trafficking crime includes "any felony punishable under the Controlled Substances Act." *Id.* § 924(c)(2). In a separate provision, the statute sets out a two-part definition of crime of violence. *See id.* § 924(c)(3). In *United States v. Davis*, the Supreme Court struck down one of the two parts of the crime of violence definition. 139 S. Ct. 2319, 2336 (2019) ("[Section] 924(c)(3)(B) [the residual clause of the definition of crime of violence] is unconstitutionally vague."). The Supreme Court's holding in *Davis* had no effect on the validity of the definition of drug trafficking crime. Defendants who were convicted of carrying a firearm during a drug trafficking crime therefore cannot have their convictions re-examined under the *Davis* line of cases. *See United States v. Parnell*, 652 F. App'x 117, 122 (3d Cir. 2016) ("*Johnson* [a precursor to *Davis*] does not call into question the statute's unambiguous definition of 'drug trafficking crime.'").

Here, the jury unanimously found Whitfield carried a firearm during a drug trafficking crime and his conviction is therefore not implicated by *Davis*. Whitfield was convicted of conspiring and attempting to sell drugs in violation of 21 U.S.C. § 846. That statute is part of the Controlled Substances Act. Conspiring and attempting to sell drugs therefore qualify as a drug trafficking crimes under § 924(c). In response to special interrogatories in the jury verdict form,

the jury found Whitfield had carried a firearm while committing these crimes. *See* Jury Verdict Form 11, ECF No. 245. Because Whitfield was convicted of carrying a firearm in relation to drug trafficking crimes, he is not entitled to relief under *Davis*.

**CONCLUSION**

The record demonstrates that Whitfield's counsel was not ineffective, and Whitfield's conviction for carrying a firearm during a drug trafficking crime is not affected by the Supreme Court's decisions regarding crimes of violence. The Court will thus deny Whitfield's motion to vacate, set aside, or correct his sentence without a hearing. *See* 28 U.S.C. § 2255(b) (a hearing is not required when "[the] records of the case conclusively show that the prisoner is entitled to no relief"). Because reasonable jurists could not disagree about whether Whitfield is entitled to relief, the Court will not issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 ("Where a district court has rejected the constitutional claims on the merits, the showing required [for a certificate of appealability] is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.